AF Approval _Blw for Npmm_                    Chief Approval _RBH_

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:22-cr-01-ACC-GJK

TOMAS ZIUPSNYS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Karin Hoppmann, Acting United States Attorney for the Middle District of

Florida, and the defendant, TOMAS ZIUPSNYS, and the attorney for the

defendant, Trey Flynn, Esq., mutually agree as follows:

**A.    Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One, Two,

and Three of the Information.  Count One charges the defendant with

Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349.  Count

Two charges the defendant with Bank Fraud, in violation of 18 U.S.C. § 1344.

Count Three charges the defendant with Aggravated Identity Theft, in

violation of 18 U.S.C. § 1028A(a)(1).

Defendant's Initials _TL_

2.      Minimum and Maximum Penalties

Counts One and Two are each punishable by a maximum term of imprisonment of 30 years; a fine of not more than $1 million; a term of supervised release of not more than 5 years; and a special assessment of $100.

Count Three is punishable by a mandatory term of imprisonment of 2 years, which must run consecutively to the term of imprisonment imposed for Counts One and Two; a fine of not more than $250,000; a term of supervised release of not more than 1 year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.      Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

| First: | Two or more persons, in some way or manner, combined, conspired, confederated, or agreed to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the Information; and |
| Second: | The defendant knew the unlawful purpose of the plan and knowingly and willfully joined in it. |

Defendant's Initials ⟶        2

The elements of Count Two are:

| | |
|---|---|
| First: | The defendant knowingly carried out or attempted to carry out a scheme or artifice to defraud a financial institution or to get money, funds, credits, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact; |
| Second: | The false or fraudulent pretenses, representations, or promises were material; |
| Third: | The defendant intended to defraud the financial institution; and |
| Fourth: | The financial institution was federally insured. |

The elements of Count Three are:

| | |
|---|---|
| First: | The defendant knowingly transferred, possessed, or used another person's means of identification; |
| Second: | Without lawful authority; |
| Third: | During and in relation to a felony conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; and |
| Fourth: | The defendant knew that the means of identification belonged to an actual person. |

4.  <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.  <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with

Defendant's Initials  _TL_          3

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

6.      Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to identity theft victims and CenterState Bank.

7.      Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will

recommend to the Court that the defendant be sentenced within the defendant's

applicable guidelines range as determined by the Court pursuant to the United States

Sentencing Guidelines, as adjusted by any departure the United States has agreed to

recommend in this plea agreement.  The parties understand that such a

recommendation is not binding on the Court and that, if it is not accepted by this

Court, neither the United States nor the defendant will be allowed to withdraw from

the plea agreement, and the defendant will not be allowed to withdraw from the plea

of guilty.

8.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information

is received suggesting such a recommendation to be unwarranted, the United States

will recommend to the Court that the defendant receive a two-level downward

adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The

defendant understands that this recommendation or request is not binding on the

Defendant's Initials _____                    4

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed

Defendant's Initials _____                 5

prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      10.   <u>Use of Information - Section 1B1.8</u>

      Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _TL_         6

11.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware

Defendant's Initials ⟨signature⟩                    7

of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case

Defendant's Initials ⟋⟍          8

but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

      12.    <u>Forfeiture of Assets</u>

      The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(2)(A), whether in the possession or control of the United States, the defendant, or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following:  the $632,000 in proceeds the defendant admits he obtained as the result of the commission of the bank fraud conspiracy to which the defendant is pleading guilty, as well as: 1) the approximately $50,000 seized from Tannehill, Carmean & McKenzie PLLC's account at Trust Mark National Bank, which was being held on behalf of Holly Urban and/or Hufer3 Inc.; and 2) the approximately $67,845.66 seized from USAA Federal Savings Bank Account #7284-9 held in the name of Tomas Ziupsnys and Holly Urban, which assets were proceeds of the bank fraud conspiracy to which the defendant is to plead guilty.  The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

      The defendant acknowledges and agrees that (1) the defendant obtained $632,000 as a result of the commission of the bank fraud conspiracy and (2) as a

Defendant's Initials _____      9

result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Fed. R. Crim. P., to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

Defendant's Initials _____        10

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful

Defendant's Initials _____           11

means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Fed. R. Crim. P. 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the plea agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _____              12

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials ⎣ ⏧ ⎦           13

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $300, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United

Defendant's Initials _____        14

States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.    <u>Financial Disclosures</u>

     Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit

Defendant's Initials ____       15

reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court

Defendant's Initials _____                16

erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any

Defendant's Initials _____        17

discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _____       18

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___30ᵗʰ___ day of September, 2021.

KARIN HOPPMANN
Acting United States Attorney


_____          _____
TOMAS ZIUPSNYS                                        Emily C. L. Chang
Defendant                                                       Assistant United States Attorney


_____          _____
Trey Flynn, Esq.                                            Roger B. Handberg
Attorney for Defendant                               Assistant United States Attorney
                                                                        Chief, Orlando Division


Defendant's Initials ___          20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:21-cr-

TOMAS ZIUPSNYS

PERSONALIZATION OF ELEMENTS

As to Count One:

First:     Did two or more persons, in some way or manner, combine, conspire, confederate, or agree to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the Information?

Second:    Did you know the unlawful purpose of the plan and knowingly and willfully join in it?

As to Count Two:

First:     Did you knowingly carry out or attempt to carry out a scheme or artifice to defraud a financial institution or to get money, funds, credits, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact?

Second:    Were the false or fraudulent pretenses, representations, or promises material?

Third:     Did you intend to defraud the financial institution?

Fourth:    Was the financial institution federally insured?

As to Count Three:

First:     Did you knowingly transfer, possess, or use another person's means of identification?

Defendant's Initials ⟨TZ⟩            21

<u>Second</u>:      Did you do so without lawful authority?

<u>Third</u>:      Did you do so in relation to a felony conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349?

<u>Fourth</u>:     Did you know that the means of identification belonged to an actual person?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 6:21-cr-

TOMAS ZIUPSNYS

### FACTUAL BASIS

#### A. Introduction

##### 1. The Conspirators' Companies

At times material to the Information, TOMAS ZIUPSNYS resided in Reunion, Florida, in the Middle District of Florida.

Helly Tec LLC was a limited liability company that TOMAS ZIUPSNYS formed in Florida, on or about June 21, 2017. The formation documents listed TOMAS ZIUPSNYS as the manager and registered agent of Helly Tec. On or about September 18, 2017, TOMAS ZIUPSNYS removed himself and added Conspirator-1 as the registered agent and manager of Helly Tec LLC. On or about May 28, 2019, Conspirator-1 removed herself and added TOMAS ZIUPSNYS as the registered agent and manager of Helly Tec LLC. TOMAS ZIUPSNYS voluntarily dissolved Helly Tec LLC on or about June 12, 2019.

LTGFS Inc. was a corporation that TOMAS ZIUPSNYS formed in Florida, on or about March 14, 2018. The incorporation documents listed TOMAS ZIUPSNYS as the President of LTGFS Inc. TOMAS ZIUPSNYS voluntarily dissolved LTGFS Inc. on or about June 24, 2019.

Defendant's Initials _____                        23

SLSHT LLC was a limited liability company that TOMAS ZIUPSNYS formed in Florida, on or about January 22, 2019.  The formation documents listed TOMAS ZIUPSNYS as the registered agent and manager of SLSHT LLC.  TOMAS ZIUPSNYS voluntarily dissolved SLSHT LLC on or about November 4, 2019.

HFSG LLC was a limited liability company that Conspirator-1 formed in Florida, on or about April 1, 2019.  The formation documents listed Conspirator-1 as the registered agent and manager of HFSG LLC.  On or about October 21, 2019, Conspirator-1 registered TOMAS ZIUPSNYS as the new registered agent of HFSG LLC.  Conspirator-1 remained the manager of HFSG LLC.

MMHFSG LLC was a limited liability company that Conspirator-1 formed in Florida, on or about May 9, 2019.  The formation documents listed Conspirator-1 as the registered agent and manager of MMHFSG LLC.

Goshawk Optical LLC was a limited liability company that Conspirator-1 formed in Florida, on or about July 3, 2019. Conspirator-1 listed herself as the manager of Goshawk Optical LLC.

Doggo Enterprises LLC was a limited liability company that Conspirator-1 formed in Florida, on or about February 17, 2020.  The formation documents listed Conspirator-1 as the sole authorized member of Doggo Enterprises LLC.

Holster Designs was an unregistered business entity that TOMAS ZIUPSNYS claimed to own and operate.

Defendant's Initials _____            24

## 2. Paycheck Protection Program (PPP)

In or around March 2020, in response to the economic crisis caused by the novel coronavirus pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act"). Among other things, the CARES Act made available to qualified small businesses billions of dollars' worth of government-guaranteed loans, through the Paycheck Protection Program (PPP). The purpose of PPP loans was to help small businesses that were suffering from the economic downturn to continue to pay salary or wages to their employees.

The PPP was administered by the Small Business Administration (SBA), which promulgated regulations concerning eligibility for PPP loans. Eligible businesses could apply for a PPP loan through a federally insured depository institution.

To qualify for a loan under the PPP, an applicant had to meet certain criteria including, among other things, that it (the business) was "in operation on February 15, 2020 and either had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." Moreover, the loan amount that could be approved under the PPP and implementing regulations typically was a function of the applicant's historical payroll costs. Accordingly, to obtain a PPP loan, the applicant was required to state, among other things, its average monthly payroll expenses and number of employees. The applicant was also required to provide documentation of the business's payroll expenses.

Defendant's Initials _____    25

The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, mortgage interest payments (but not mortgage prepayments or principal payments), rent payments, utility payments, interest payments on debt obligations that were incurred before February 15, 2020, or refinancing certain specified SBA loans. The proceeds of a PPP loan were not permitted to be used to fund the borrower's ordinary day-to-day living expenses, or anything unrelated to the specified authorized expenses.

### 3.  Relevant Financial Institutions

CenterState Bank of Florida ("CenterState Bank") and Customers Bank each were banks the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC). CenterState Bank and Customers Bank each therefore constituted a "financial institution" for purposes of 18 U.S.C. §§ 20 and 1344.

### B.  Conspiracy to Commit Bank Fraud

Beginning on an unknown date, but at least as early as on or about April 10, 2020, and continuing through at least in or about May 2020, in the Middle District of Florida, and elsewhere, the defendant, TOMAS ZIUPSNYS, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to commit bank fraud: that is, to knowingly, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud a financial institution and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of a financial institution by

Defendant's Initials _____        26

means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344.

### 1. Purpose and Object of the Conspiracy

It was the purpose and object of the scheme and artifice for TOMAS ZIUPSNYS and others known and unknown to the United States Attorney to fraudulently obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of a financial institution, namely, PPP loan proceeds, and to spend those proceeds on items that were not authorized under the PPP.

### 2. Manner and Means of the Conspiracy

The manner and means by which the conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

It was a part of the conspiracy that one or more conspirators would and did submit and cause to be submitted fraudulent PPP loan applications to CenterState Bank and Customers Bank on behalf of Helly Tec LLC, LTGFS Inc., HFSG LLC, MMHFSG LLC, SLSHT LLC, Goshawk Optical LLC, Doggo Enterprises LLC, and Holster Designs (each a "COMPANY," and collectively, the "COMPANIES").

It was further a part of the conspiracy that one or more conspirators would and did knowingly include in the COMPANIES' PPP loan applications materially false and fraudulent representations and supporting documentation, including:

False claims that a COMPANY had the average monthly payroll expenses stated in the application, when in truth and in fact, as the conspirators then and there

Defendant's Initials _____   27

well knew, the COMPANY's actual average monthly payroll expenses were significantly lower, or entirely nonexistent.

False claims that a COMPANY had the number of employees stated in the application, when in truth and in fact, as the conspirators then and there well knew, the COMPANY's actual number of employees was significantly lower, or entirely nonexistent.

Fabricated documentation that purported to show a COMPANY's annual sales revenue, when in truth and in fact, as the conspirators then and there well knew, the COMPANY's actual annual sales revenue was significantly lower, or entirely nonexistent.

Fabricated documentation that purported to list the names of employees of a COMPANY and timeframes in which those employees worked for the COMPANY, when in truth and in fact, as the conspirators then and there well knew, some or all of the listed employees had not worked for the COMPANY during the stated timeframes, if at all.

Fabricated documentation that purported to list the payments made to employees of a COMPANY and the timeframes in which those payments had been made, when in truth and in fact, as the conspirators then and there well knew, some or all of the employees had not received the stated payments from COMPANY during the stated timeframes, if at all.

Defendant's Initials _TC_                28

A false certification that a COMPANY was in operation on February 15, 2020, when in truth and in fact, as the conspirators then and there well knew, the COMPANY had ceased operation before February 15, 2020.

A false certification that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule," when in truth and in fact, as the conspirators then and there well knew, the conspirators intended to use the PPP loan proceeds for unauthorized purposes, including the purchase of FedEx routes for their personal enrichment.

A false certification that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," when in truth and in fact, as the conspirators then and there well knew, the information provided in the PPP loan application and supporting documentation and forms was not true and accurate in all material respects.

It was further part of the conspiracy that one or more of the conspirators obtained proceeds of PPP loans issued to a COMPANY as a result of a materially false PPP loan application.

It was further part of the conspiracy that the conspirators knowingly spent and attempted to spend those proceeds in part on numerous items that they knew were not authorized under the PPP, including personal credit card expenses and FedEx routes.

Defendant's Initials ___TL___        29

It was further a part of the conspiracy that one or more conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme and the acts committed in furtherance of the scheme.

### 3. Overt Acts

The following is a non-exhaustive list of overt acts performed during the course of this conspiracy:

On or about the dates set forth below, the following individuals prepared, and submitted and caused to be submitted to the listed financial institutions, false and fraudulent PPP loan applications on behalf of each specified COMPANY:

| Loan Application No. | Date | COMPANY Applicant (Amount Sought) | Individual(s) Who Prepared and Submitted PPP Loan Application |
|---|---|---|---|
| 1 | 4/10/2020 | Goshawk Optical LLC ($237,500) | TOMAS ZIUPSNYS Conspirator-1 |
| 2 | 4/11/2020 | MMHFSG LLC ($255,500) | TOMAS ZIUPSNYS Conspirator-1 |
| 3 | 4/13/2020 | HFSG LLC ($376,500) | TOMAS ZIUPSNYS Conspirator-1 |
| 4 | 4/13/2020 | Doggo Enterprises LLC ($86,000) | TOMAS ZIUPSNYS Conspirator-1 |
| 5 | 4/27/2020 | Helly Tec LLC ($311,750) | TOMAS ZIUPSNYS Conspirator-1 |
| 6 | 4/27/2020 | Goshawk Optical LLC ($265,300) | TOMAS ZIUPSNYS Conspirator-1 |
| 7[1] | 4/28/2020 | SLSHT LLC ($86,500) | TOMAS ZIUPSNYS |

---

[1] TOMAS ZIUPSNYS contacted CenterState Bank to cancel this application on or about May 9, 2020— approximately one day after CenterState Bank notified TOMAS ZIUPSNYS and Conspirator-1 that the bank had frozen any of their accounts that contained PPP loan proceeds, and that the bank was reviewing their PPP loans.

Defendant's Initials _____        30

| Loan Application No. | Date | COMPANY Applicant (Amount Sought) | Individual(s) Who Prepared and Submitted PPP Loan Application |
|---|---|---|---|
| 8 | 4/30/2020 | LTGFS Inc. ($258,327) | TOMAS ZIUPSNYS |
| 9 | 5/1/2020 | Holster Designs ($152,330) | TOMAS ZIUPSNYS |

The conspirators submitted and caused to be submitted (a) Loan Applications 1 through 5, and 7 through 9, to CenterState Bank, and (b) Loan Application 6 to Customers Bank.

The conspirators submitted Loan Applications 1 through 9 with fraudulent intent, knowing that each of the applications contained false information, and intending to spend any PPP loan proceeds on items that were not authorized under the PPP, including FedEx routes for their personal enrichment.

The above-identified conspirators included in Loan Applications 1 through 9 false claims that the relevant COMPANY had the average monthly payroll expenses stated in the application, even though they knew that the COMPANY's average monthly payroll expenses were significantly lower, or entirely nonexistent.

The above-identified conspirators included in Loan Applications 1 through 9 false claims that the relevant COMPANY had the number of employees stated in the application, even though they knew the COMPANY's actual number of employees was significantly lower, or entirely nonexistent.

The above-identified conspirators included in Loan Applications 1 through 3, 5, and 7 through 9, fabricated documentation that purported to show the relevant

Defendant's Initials _____                     31

COMPANY's annual sales revenue, even though the conspirators knew that the COMPANY's actual annual sales revenue was significantly lower, or entirely nonexistent.

The above-identified conspirators included in Loan Applications 1 through 3, and 5 through 9, fabricated tax documents, including Internal Revenue Service Forms 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return), 941 (Employer's Quarterly Federal Tax Return), 944 (Employer's Annual Federal Tax Return), 1099-MISC (Miscellaneous Income), and W-3 (Transmittal of Wage and Tax Statements), and Schedules C (Profit or Loss from Business).

The above-identified conspirators included in Loan Applications 1 through 5, and 7 through 9, fabricated documentation that purported to list the names of employees of the relevant COMPANY and timeframes in which those employees worked for the COMPANY, even though the conspirators knew that some or all of the listed employees had not worked for the COMPANY during the stated timeframes, if at all.

The above-identified conspirators included in Loan Applications 1 through 5, and 7 through 9, fabricated documentation that purported to list the payments made to employees of the relevant COMPANY and the timeframes in which those payments had been made, even though the conspirators knew that some or all of the employees had not received the stated payments from the COMPANY during the stated timeframes, if at all.

Defendant's Initials _____        32

The above-identified conspirators included in Loan Application 3 a false certification that the relevant COMPANY (HFSG LLC) was in operation on February 15, 2020, even though the conspirators knew that HFSG LLC had ceased operation before February 15, 2020.  Although the conspirators had previously operated a restaurant through HFSG LLC, that restaurant had closed by in or about July 2019.

The above-identified conspirators included in Loan Applications 2 and 3 a false certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant [i.e. the relevant COMPANY]," even though the conspirators knew that the COMPANY was defunct by the time the conspirators applied for a PPP loan on behalf of the COMPANY. SLSHT LLC (Loan Application 7) and LTGFS Inc. (Loan Application 8) were also defunct by the time ZIUPSNYS applied for PPP loans on behalf of those COMPANIES.

The above-identified conspirators included in Loan Applications 2 through 6 a false certification that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule," even though the conspirators knew that they actually intended to use the PPP loan proceeds for unauthorized purposes, including the purchase of FedEx routes for their personal enrichment.

Defendant's Initials ⁀ℒ_____                    33

The above-identified conspirators included in Loan Applications 2, 3, and 6 a false certification that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," even though the conspirators knew that the information they provided in the PPP loan application and supporting documentation and forms was not true and accurate in all material respects.

On or about April 28, 2020, TOMAS ZIUPSNYS and Conspirator-1 obtained from CenterState Bank $255,500 in PPP loans issued to MMHFSG LLC as a result of their materially false PPP loan application. On or about April 29, 2020, TOMAS ZIUPSNYS and Conspirator-1 wired $50,000 of those PPP loan proceeds to an escrow account in connection with their intended purchase of a FedEx route. Those funds were ultimately seized by the Federal Bureau of Investigation (FBI). On or about that same day, TOMAS ZIUPSNYS and Conspirator-1 wired an additional $75,450 of those PPP loan proceeds to a trust account in connection with their intended purchase of a separate FedEx route. Those funds were ultimately returned to an account controlled by TOMAS ZIUPSNYS and Conspirator-1 and then seized by the FBI. From on or about May 1, 2020 through on or about May 6, 2020, Conspirator-1 used an additional $10,500 of those PPP loan proceeds to pay a personal Visa credit card debt. Those funds were spent on various personal purchases, and not on expenses authorized by the PPP.

On or about April 28, 2020, TOMAS ZIUPSNYS and Conspirator-1 obtained from CenterState Bank $376,500 in PPP loans issued to HFSG LLC as a result of

Defendant's Initials _____   34

their materially false PPP loan application.  Before the conspirators spent any of the

proceeds, however, CenterState Bank suspected the conspirators of fraud, then froze

and ultimately recovered the funds.

On or about May 8, 2020, TOMAS ZIUPSNYS and Conspirator-1 obtained

from Customers Bank $265,300 in PPP loans issued to Goshawk Optical LLC as a

result of their materially false PPP loan application.  The funds were deposited in

one of Conspirator-1's CenterState Bank accounts.  Before the conspirators spent any

of the proceeds, however, CenterState Bank suspected the conspirators of fraud, and

froze and ultimately returned the funds to Customers Bank.

### C. **Bank Fraud**

On or about April 11, 2020, in the Middle District of Florida, and elsewhere,

the defendant, TOMAS ZIUPSNYS, aided and abetted by others, and for the

purpose of knowingly, and with intent to defraud executing, and attempting to

execute the aforementioned scheme and artifice to defraud a financial institution,

and to obtain any of the moneys, funds, credits, assets, and other property owned by,

and under the custody and control of a financial institution, by means of materially

false and fraudulent pretenses, representations, and promises, did submit and cause

to be submitted a false PPP loan application, to a financial institution, that is,

CenterState Bank.

The factual basis for this bank fraud is set forth above in Section B.3 of this

Factual Basis, concerning Loan Application 2.

Defendant's Initials ____                    35

**D. Aggravated Identity Theft**

On or about April 10, 2020, in the Middle District of Florida, and elsewhere, the defendant, TOMAS ZIUPSNYS, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, J.W., during and in relation to a felony violation of Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 as charged in Count One of the Information, knowing that such means of identification belonged to an actual person.

TOMAS ZIUPSNYS and Conspirator-1 included in Loan Application 1 (for Goshawk Optical LLC) a series of Forms 1099-MISC (Miscellaneous Income) for the 2019 tax year. Each Form 1099-MISC listed the name, address, Social Security number, and compensation of a purported Goshawk Optical LLC employee.

Among the forms that TOMAS ZIUPSNYS and Conspirator-1 submitted were Forms 1099-MISC in the names of T.W. and T.W.'s children, E.W. and J.W. T.W., E.W., and J.W. never worked for Goshawk Optical LLC.

T.W. had previously worked at trade shows for Helly Tec LLC, a company that TOMAS ZIUPSNYS and Conspirator-1 owned and operated. When the coronavirus pandemic began and those trade shows were shut down, however, TOMAS ZIUPSNYS contacted T.W. and expressed interest in employing T.W., E.W., and J.W. in connection with FedEx routes that he was going to purchase. TOMAS ZIUPSNYS requested the Social Security numbers of T.W., E.W., and J.W., allegedly for the purpose of completing tax withholding forms in the event that T.W., E.W., and J.W. became his employees in the future. Accordingly, T.W.

Defendant's Initials _____   36

provided the information that TOMAS ZIUPSNYS requested, but TOMAS

ZIUPSNYS never contacted her again about that future employment.  Instead,

TOMAS ZIUPSNYS subsequently used the Social Security numbers of T.W., E.W.,

and J.W. on false Forms 1099-MISC that he submitted in support of Loan

Application 1.